**1008**

coming such in relation to her last entry in August, 1934. Canciamilla v. Haff (C.C.A. 9) 64 F.(2d) 875; Kumaki Koga v. Berkshire (C.C.A.9) 75 F.(2d) 820; United States ex rel. Matterazza v. Fogarty (D.C. N.Y.) 13 F.Supp. 403.

The record clearly shows facts under these decisions that warranted the findings of the immigration authorities concerning the poverty and dependence of the alien upon public bounty, and, if such matters were the sole elements to be considered in this habeas corpus proceeding, the Secretary's warrant of deportation would be regarded as having been fairly issued and should be executed. But the status of this alien in this country is naturally and inextricably tied to the lives and welfare of her three minor American-born children who cannot be legally deported or excluded from the United States.

If the mother is deported, the children should and probably must go with her to Mexico. The record shows that it is the children who are the major recipients of the public benefactions, and, if the deportation of this alien mother is sought to be justified upon the claim of public economy, this result will be attained only slightly. There is no one in the United States able to support the children. They must continue to be public charges in the United States or be forced to go to Mexico with their mother. The first eventuality is safer and more humane than the last. Sound public policy and the welfare of the American-born children of the alien preclude as a matter of law her deportation at this time.

Leo J. Hickey, U. S. Atty., of Brooklyn, N. Y. (John R. Starkey, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

Louis Aldino, of Brooklyn, N. Y., for defendant.

ABRUZZO, District Judge.

An information was filed against the defendant, charging that on September 21, 1936, in violation of the Act of Congress of June 29, 1888, c. 496, § 1, 25 Stat. 209 (title 33, § 441, United States Code [33 U.S.C.A. § 441]), the defendant unlawfully placed, discharged and deposited refuse, sludge and oil from the oil barge Moormack No. 2 in the tidal waters of the Harbor of New York and its adjacent and tributary waters, within the limits which have been prescribed by the supervisor of the harbor, to wit, Gowanus canal and Buttermilk channel.

The government produced evidence to indicate that oil found in Buttermilk channel was traced to the oil barge Moormack No. 2, owned by the defendant. This evidence indicated a violation of the law set forth in the information.

The defendant introduced evidence that this oil barge was moored tightly and that they knew nothing about the discharge of the oil until the government inspector notified them of that fact. The previous night

---

**UNITED STATES v. CARROLL OIL TERMINALS, Inc.**

No. 36849.

District Court, E. D. New York.

April 23, 1937.

there occurred a severe storm with a great deal of wind. It was found that a petcock or another part of the barge had been broken which permitted the oil to leak out unknown to the defendant. It was contended that this unusual storm was the cause of the leak.

The defendant's testimony showed that it had no control over the occurrence which caused the oil to leak into the channel.

The government's inspector was justified in making the charge. However, in view of the circumstances that the oil leaked into the waters through no direct act and because of the situation over which the defendant had no control, the court finds in favor of the defendant.

## In re BEDFORD WATCH CO., Inc.

District Court, S. D. New York.
April 20, 1937.

Goldman & Frier, of New York City, for claimants.

Joseph B. Kaufman, of New York City, for bankrupt.

LEIBELL, District Judge.

It appears that the courts of the Confederation of Switzerland will not execute the usual commission to examine witnesses, but will recognize and execute letters rogatory. The ends of justice will therefore be better promoted by the issuance of letters rogatory. Section 309, New York Civil Practice Act. Claimants' motion for issuance of letters rogatory is therefore granted. DeVilleneuve v. Morning Journal Ass'n (D.C.) 206 F. 70; Spellman v. Sullivan (C. C.A.) 61 F.(2d) 787.

The order to be submitted will name the witnesses to be examined. Claimants' attorneys make affidavit that it will take three weeks for them to obtain the names of the witnesses. Submission of the order herein may therefore be delayed until claimants have the names of the prospective witnesses. The order will also provide for the filing and service of the direct interrogatories within ten days after the making of the order herein and that cross-interrogatories shall be filed and served within ten days from the service of the direct interrogatories. Objections to interrogatories and cross-interrogatories shall be presented to the court on two days' notice and within ten days after the filing and service of the matter objected to. See Rule 9 of the General Rules of this Court.